IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GLADYS JEAN BUTLER,
        Plaintiff,

v.                                                      Civil Case No. 3:24cv286

VIRGINIA DEPARTMENT
OF TRANSPORTATION, et al.,
        Defendants.

## OPINION

The *pro se* plaintiff, Gladys Jean Butler, worked for the Virginia Department of transportation ("VDOT") from April 2013 to December 2022. Butler now sues VDOT and two of her former supervisors, Lawrence K. Davis and Deborah M. Gardner (collectively, "the defendants"), asserting that the defendants created a hostile work environment, engaged in discrimination, and retaliated against her in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, ("ADA").[1]  Because the Court does not have jurisdiction over Butler's claims against VDOT, the Court will grant the motion to dismiss as to VDOT.  Further, Butler's claims against Davis and Gardner in their official capacities fail for the same reasons she cannot sue VDOT, and the ADA does not allow Butler to sue Davis and Gardner in their individual capacities.  The Court, therefore, will grant the motion to dismiss as to Davis and Gardner.

---

[1] Butler asserts that the defendants created a hostile work environment, discriminated against her, and retaliated against her, but does not specify a statute under which she sues. Construing Butler's pleadings liberally, Butler appears to raise her claims under Title I of the ADA. Title I of the ADA "covers requirements for employers" including state and local government employers. *Introduction to the Americans with Disabilities Act*, ADA.gov, https://www.ada.gov/topics/intro-to-ada/#:~:text=Different%20titles%20set%20out%20the,for%20state%20and%20local%20governments (last visited Nov. 27, 2024); *see* 42 U.S.C. §§ 12111–12117.

# I. **BACKGROUND**[2]

Butler worked in VDOT's Records Management Center ("RMC") as a Program Analyst from April 25, 2013, to December 20, 2022. Butler believed that her then supervisor, Davis, interacted with her in an inappropriate manner from 2014 to 2018 when he, among other things, touched her left shoulder, yelled at her, gave her unsolicited driving advice, and directed her co-worker to assign her tasks. Due to Butler's concerns, she proposed that she report directly to Gardner, Davis's supervisor, instead of Davis. Gardner approved Butler's request.

When Butler started reporting directly to Gardner, Butler's workspace moved from the building she originally worked in with Davis to a new building where Gardner worked. But during the COVID-19 pandemic, Butler worked remotely two days a week. In 2022, all teleworkers returned to their VDOT worksite full-time. VDOT decided to move all RMC staff—including Butler, Davis, and Gardner—to one location on the fifteenth floor of the VDOT Annex Building. Butler did not want to move workspaces because "the thought of working with [her] previous supervisor and possibly being subjected to the same behavior that led to [her] being moved to another section exacerbated [her] medical condition." (ECF No. 3–1, at 7.) But in her request not to move to the fifteenth floor, she did not identify a medical condition or disability. On June 3, 2022, Gardner emailed Butler a reminder to report to the fifteenth floor by June 24, 2022. Two

---

[2] In evaluating the defendants' motion to dismiss, the Court relies on the facts from Butler's Complaint and the exhibits attached thereto, including various administrative records. (ECF No. 3). The Court is "generally limited to a review of the allegations of the complaint itself" when considering a motion to dismiss. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). But the Court can "also consider documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." *Id.* Here, among other exhibits, Butler attaches her EEOC charge, a letter she wrote to Gardner, and VDOT's position statement to her Complaint, which the Court will consider in determining the motion to dismiss. (ECF No. 3–1, at 3–5, 7, 9.)

days later, Butler emailed VDOT's civil rights representative. She requested relocation away from the rest of the RMC team and indicated that she intended to submit an ADA request. VDOT personnel denied Butler's relocation request, which caused her to go on short term disability leave.

While on disability leave, Butler's doctors informed her that her mental and physical health began deteriorating due to stress and anxiety from the workplace. Butler maintains that she incurred a "mental disability of anxiety, stress, PTSD[,] and sleep deprivation" from VDOT's "bullying, hostile[,] and toxic work environment." (*Id.* at 19.) Consequently, on August 20, 2022, Butler requested permanent, full-time telework pursuant to the ADA. Due to logistical issues, Butler did not submit medical documentation supporting her ADA request until November 9, 2022. On November 29, 2022, Butler, Gardner, and other VDOT personnel met to clarify Butler's accommodation request. Butler explained that she initially asked for relocation to a workspace apart from the rest of the RMC team. Because VDOT denied her relocation request, however, she sought full-time telework. VDOT ultimately denied Butler's telework request but offered her an alternative accommodation which would allow Butler to take up to three fifteen-minute breaks throughout the workday, in addition to her lunch break. The accommodation required Butler to inform Gardner each time she began a break and each time she returned. While Butler initially accepted VDOT's alternative accommodations, and tried to abide by its terms, she later rescinded her acceptance. In Butler's view, coordinating each of her breaks with Gardner did not allow Butler to "decompress and work through any anxiety or stress she was experiencing" when she still had to "interact with [Davis,] the object [] of [her] anxiety, stress[,] and PTSD." (*Id.* at 19.) Thus, to preserve her mental health and prepare for necessary surgery, Butler elected to remain on short term disability leave.

3

On December 5, 2022, Butler "attempted to return to work" but "was unable to go up to the 15th floor." (*Id.* at 18.) As Butler waited in the lobby, Gardner approached and said that she expected Butler to report to the fifteenth floor. Butler told Gardner that she could not work on the fifteenth floor and that she had to go home because she did not feel well. On December 8, 2022, Butler told Gardner that she intended to return to work, but asked Gardner to relocate her workspace again. Gardner denied the request. Because Butler felt that she could not return to a workspace that was "unhealthy, toxic[,] and non-productive" for her, Butler "transitioned into long-term disability status on December 20, 2022, thus separating her employment" at VDOT. (*Id.* at 12, 18.)

## II. <u>DISCUSSION</u>

Butler alleges that the defendants violated the ADA by creating a hostile work environment, discriminating against her based on her disability, failing to accommodate her disability, and retaliating against her when she reported her supervisors' inappropriate behavior. VDOT moves to dismiss under Rule 12(b)(1) based on its state sovereign immunity and Eleventh Amendment immunity. Gardner and Davis likewise move to dismiss under Rule 12(b)(1),[3] arguing that they cannot face liability in either their official or individual capacities under the ADA.[4]

---

[3] While Davis and Gardner move to dismiss in their official and personal capacities pursuant to Rule 12(b)(1), a court considers whether a plaintiff can sue an individual in their individual capacity under Rule 12(b)(6). *See Anderson v. Sch. Bd. of Gloucester Cnty., Va.*, No. 3:18CV745, 2020 WL 2832475, at *12 (E.D. Va. May 29, 2020) (dismissing a claim against individual defendants under Rule 12(b)(6) because "individuals are not liable for violations of the ADA.") (quoting *Allen*, 245 F. Supp. 2d at 786). Thus, the Court will address the motion to dismiss regarding Davis and Gardner in their individual capacities under Rule 12(b)(6).

[4] Butler's complaint does not specify whether she sues Gardner and Davis in their individual or official capacities. Considering Butler's *pro se* status, the Court will construe her complaint as raising allegations against Gardner and Davis in both capacities.

4

### *A. Rule 12(b)(1) Motion*

#### *1. Rule 12(b)(1) standard*

A court should assess a 12(b)(1) motion under the same standard as a 12(b)(6) motion. *Ministry of Def. of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024). In other words, the Court must "accept the truth of all facts alleged in the complaint and must deny the motion if those facts are sufficient to invoke subject matter jurisdiction." *Id.* Additionally, a "document filed *pro se* is 'to be liberally construed,'" and "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).[5] The plaintiff bears the burden of alleging and proving that federal jurisdiction exists. *See Kaplan v. James*, 25 F. Supp. 3d 835, 838 (E.D. Va. 2014); *Smith v. Husband*, 376 F. Supp. 2d 603, 607 (E.D. Va. 2005).

#### *2. VDOT*

##### *a. State Sovereign Immunity*

Sovereign immunity "is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). "State sovereign immunity is 'based on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.'" *Stewart v. North Carolina*, 393 F.3d 484, 488 (4th Cir. 2005) (quoting *Nevada v. Hall*, 440 U.S. 410, 416 (1979)). "As a general rule, the Commonwealth [of Virginia] is immune both from actions at law for damages and from suits in

---

[5] Butler filed a Motion for Leniency on July 29, 2024, asking the Court for "patience, compassion and understanding," because she has been unable to secure legal counsel. (ECF No. 13.) Because Butler's motion requests that the Court interpret her pleadings in a way precedent already requires, the Court will deny the motion as moot. *Id.*

equity to restrain governmental action or to compel such action." *All. to Save the Mattaponi v. Commonwealth of Va., Dep't of Env't Quality ex rel. State Water Control Bd.*, 621 S.E.2d 78, 96, 270 Va. 423, 455 (Va. 2005). This immunity extends to state agencies, such as VDOT. *See Thomas v. Va. Dep't of Transp. (Bristol District)*, 1:22cv36, 2023 WL 4355055, at *4 (W.D. Va. July 5, 2023); *Passaro v. Virginia*, 935 F.3d 243, 245 (4th Cir. 2019). If state sovereign immunity applies, the Court lacks subject matter jurisdiction to hear the claim. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53, 76 (1996).

Only Virginia's General Assembly may abrogate Virginia's state sovereign immunity. *All. to Save the Mattaponi*, 621 S.E.2d 78 at 96. "A waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute." *Id.* The plaintiff must prove "that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to [their] particular claim." *Welch v. United States*, 409 F.3d 646, 650-51 (4th Cir. 2005) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

"[T]he Commonwealth [of Virginia] has not waived its sovereign immunity from private lawsuits under Title I of the ADA in either state or federal court." *Passaro*, 935 F.3d at 248. Butler does not offer any evidence to refute this finding, nor does she address state sovereign immunity in her response brief. State sovereign immunity thus shields VDOT from Butler's ADA claims.

### b. Eleventh Amendment Immunity

Eleventh Amendment immunity further bars Butler's claims against VDOT. Eleventh Amendment immunity is narrower than the common law doctrine of state sovereign immunity. *Stewart*, 393 F.3d at 488. "This immunity protects a state's dignity and fiscal integrity from federal court judgments . . . and acts as a limitation on the federal judiciary's Article III powers." *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015). Although the Eleventh Amendment provides that

a state is immune from suit in federal court brought by "Citizens of another State, or by Citizens or Subjects of any Foreign State," the Supreme Court has extended its applicability to private citizens' suits against their own states. U.S. Const. amend. XI; *see, e.g.*, *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). If Eleventh Amendment immunity applies, then the Court lacks subject matter jurisdiction to hear the claims. *Seminole Tribe of Florida*, 517 U.S. at 53, 76.

A plaintiff may overcome a state's Eleventh Amendment immunity and sue a state in federal court if: (1) the state has expressly consented to suit; (2) Congress has abrogated the state's immunity from suit; or (3) the plaintiff seeks only prospective injunctive relief against the state. *See Garrett*, 531 U.S. at 363; *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159-60 (1908). None of these exceptions apply here.

A federal court's test to determine whether a state "has waived its immunity from federal-court jurisdiction is a stringent one." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 427 U.S. 666, 675 (1999) (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)). Courts will find that a state has waived immunity if the state invokes federal jurisdiction or if it makes a "'clear declaration' that it intends to submit itself to [federal] jurisdiction." *Id.* at 675–76 (quoting *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)); *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) ("[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum."). Here, the Commonwealth of Virginia neither consented to nor invoked this Court's jurisdiction.

Congress may waive states' sovereign immunity if it both "mak[es] its intention unmistakably clear in the language of the statute" and "act[s] pursuant to a valid grant of

7

constitutional authority." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) (quoting *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989)).  The Supreme Court has remarked that Congress does not have the constitutional authority to abrogate state sovereign immunity as to the ADA.  *Garrett*, 531 U.S. at 374 n.9 ("Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I.").

The doctrine of *Ex parte Young* provides an exception to Eleventh Amendment immunity when the plaintiff seeks injunctive relief against the state.  *Ex parte Young*, 209 U.S. at 159–60.  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit [against a State], a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted).  Because Butler no longer works at VDOT, the complaint cannot allege an ongoing violation.  Further, Butler seeks damages and back pay for VDOT's alleged violations, which does not constitute prospective relief.  Thus, the Eleventh Amendment continues to bar Butler's suit against VDOT.

Because VDOT possesses both state sovereign immunity and Eleventh Amendment immunity, the Court will grant the motion to dismiss Butler's claims against VDOT for lack of subject matter jurisdiction.

### 3. *Davis and Gardner in Their Official Capacities*

"'A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.'"  *Parkins ex rel. Turner v. South Carolina*, 7:21-2641, 2022 WL 19333417, at *3 (D.S.C. Apr. 5, 2022) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).  A

8

claim against an individual in their official capacity, therefore, is duplicative of a claim also brought against the entity. *See id.* Because Butler already brought her action against VDOT, the Court will grant the motion to dismiss as to those claims for the same reasons set forth above regarding VDOT.

### B.  Rule 12(b)(6) Motion

Next, the Court will consider whether Butler can sue Davis and Gardner in their individual capacities, which falls under Rule 12(b)(6).  In evaluating a complaint under a Rule 12(b)(6) motion, courts accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018). If the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," a Rule 12(b)(6) motion to dismiss succeeds. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 395–96 (4th Cir. 2018).  And, again, a "document filed *pro se* is 'to be liberally construed'" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

Even accepting Butler's allegations as true, "individuals are not liable for violations of the ADA." *See Anderson v. Sch. Bd. of Gloucester Cnty.*, 3:18cv745, 2020 WL 2832475, at *12 (E.D. Va. May 29, 2020) (quoting *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 786 (E.D. Va. 2003)).

The ADA provides that:

> No *covered entity* shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112 (emphasis added). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111. "[E]mployer ... mean[s] an employing entity, not an individual." *Stephens v. Kay Mgmt. Co., Inc.*, 907 F. Supp. 169, 174 (E.D. Va. 1995). Thus, defendants who do not independently meet the definition of a "covered entity" cannot face liability under the ADA whether sued in their official or personal capacities. *Anderson*, 2020 WL 2832475, at *12 (holding that the plaintiff could not raise claims against two individual defendants because "they [were] individuals and not 'covered entities' as that term is defined under the ADA").[6]

Butler does not allege that either Davis or Gardner are a "covered entity" within the meaning of the ADA. On the contrary, Butler's Complaint refers to both Davis and Gardner as a "supervisor" or "manager" throughout. (ECF No. 3, at 1, 5, 7, 9.) Butler also does not cite any authority that compels the Court to consider supervisors as "employers" under the ADA. Accordingly, the Court will grant the motion to dismiss Butler's claims against Davis and Gardner in their individual capacities.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the motion to dismiss Butler's Complaint as against VDOT; Davis, in his official capacity; and Gardner, in her official capacity because state sovereign immunity and Eleventh Amendment immunity preclude Butler from suing them. (ECF No. 8.) Further, the Court will dismiss Butler's claims as to Davis and Gardner in their

---

[6] *See also Shiflett v. GE Fanuc Automation Corp.*, No. 95-73-C, 1996 WL 481082 at *5 (W.D. Va. July 23, 1996) (holding that only employers, not individuals can be liable under the ADA and dismissing plaintiff's claims under the ADA against individual defendants); *Cortes v. McDonald's Corp.*, 955 F. Supp. 531, 536–38 (E.D.N.C. 1996) (finding that an individual in a supervisory position may not be held personally liable as an "employer" under the ADA and dismissing the plaintiff's ADA claim against an individual defendant)).

personal capacities because the ADA does not hold individual defendants liable for alleged violations. (ECF No. 8.)  The Court will also deny as moot Butler's motion for leniency because Butler's motion requests that the Court interpret her pleadings in a way precedent already requires. (ECF No. 13.)

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to Butler, the *pro se* plaintiff.

/s/
John A. Gibney, Jr.
Senior United States District Judge

Date: 3 December 2024
Richmond, VA